[No. 11406.  Department One.  August 15, 1914.]

JOHN T. HUETTER et al., *Respondents*, v. WAREHOUSE & REALTY COMPANY, *Appellant*.[1]

CONTRACTS—PERFORMANCE OR BREACH—DEFECTS IN PLANS—PART PERFORMANCE—RECOVERY. Subcontractors may recover from the principal contractor for work done and materials furnished in attempting performance of a contract in exact accordance with defective plans and specifications prepared by the engineer in charge, which rendered performance of the contract impossible; and although the plans and specifications were furnished by the city and not by the principal contractor, in the absence of any warranty by the subcontractors as to the sufficiency of the plans; and there is no implied warranty from the fact that the subcontractors had seen the plans on file with the city and contracted with reference thereto.

SAME—ANTICIPATED PROFITS—RECOVERY. In such case, the subcontractors are not entitled to recover profits which could have been realized had the contract been capable of performance.

Cross-appeals from a judgment of the superior court for Spokane county, Huneke, J., entered May 12, 1913, upon the verdict of a jury rendered in favor of the plaintiffs, by direction of the court, in an action on contract. Affirmed.

*Cullen, Lee & Hindman* (E. Eugene Davis, of counsel), for appellant.

*Post, Avery & Higgins*, for respondents.

[1] Reported in 142 Pac. 675.

CROW, C. J.—Action by John T. Huetter and Joseph Zirn-gibl, copartners, against Warehouse & Realty Company, a corporation, to recover the amount claimed to be due upon a construction contract. From a judgment in plaintiffs' favor, the defendant has appealed, and plaintiffs, being dissatisfied with the amount of the judgment, have cross-appealed. We will refer to the parties as plaintiffs and defendant.

On August 24, 1908, the defendant, Warehouse & Realty Company, for an agreed consideration of $86,900, entered into a written contract with the city of Spokane, whereby it agreed to construct a large fill and viaduct on Sprague avenue; the work to be done in accordance with plans and specifications prepared by the city engineer, and under the supervision, and to the satisfaction of the city engineer. On October 24, 1908, this contract was sublet by the defendant to plaintiffs; it being agreed that plaintiffs were to perform their subcontract in exact accordance with the plans and specifications prepared by the city engineer. Plaintiffs were to be paid on stated estimates made by the city engineer; eighty per cent thereof to be paid on each estimate when made and delivered, the remaining twenty per cent to be retained until the entire improvement was completed.

Plaintiffs entered upon the performance of their contract, and continued work until September 17, 1909, when a large portion of the south wall of the fill collapsed and fell. The work had been done in exact compliance with the plans and specifications, under the supervision and direction of the city engineer, who had made and delivered to plaintiffs a number of estimates. Neither of the plaintiffs was an engineer, but after the wall had fallen, they employed two expert civil engineers to examine the work and the plans and specifications, and report whether performance of the contract would be possible. These engineers, after examination, determined and reported that the plans were defective, and that any wall constructed in accordance therewith would not stand. Plaintiffs notified defendant of this report, and announced their

readiness to proceed with the work if the plans were modified so as to make the construction possible. The city ordered the defendant corporation to proceed with the work, and defendant in turn ordered plaintiffs to proceed. This the plaintiffs refused to do under the existing plans. The defendant thereupon endeavored to complete the work, and a short time thereafter a large portion of the north wall fell. Thereupon, defendant abandoned the work. Sometime later, the plans were changed, and the work was completed under the new plans.

Prior to October 9, 1909, the defendant had paid plaintiffs $54,755.86, eighty per cent on estimates. On that date, the city engineer made and delivered to plaintiffs a further estimate to the effect that all the work then completed, including that previously estimated, was of the value of $71,359.70, and that there was then due plaintiffs $2,067.20; it being understood that twenty per cent of the total estimates was still to be withheld. The amount then due, the defendant did not pay. About June 12, 1909, plaintiffs entered into a contract with Brown Brothers, of Spokane, for an iron railing to be placed on the fill as required by the plans and specifications, at a cost of $2,775. This railing was never used, although tendered to the defendant by the plaintiffs.

After the work had been completed by the city, the defendant instituted a proceeding in mandamus against the city and its officials, to compel the engineer to make, and the city to allow, an estimate in the sum of $18,662.15 for work done by plaintiffs. In that proceeding the defendant asserted and established the fact that the plans and specifications were worthless; that the work could not be performed thereunder; and obtained judgment in accordance with its demand.

At the time plaintiffs ceased work, 1,500 yards of rock had been blasted on defendant's lots for use in the fill. It was stipulated upon the trial that it had cost plaintiffs $725 to blast this rock. It was also stipulated that plaintiffs had drilled one hundred and eight holes for further blasting, at an

expense of $108. Defendant afterwards used this rock, and availed itself of the benefit of the holes in its attempt to prosecute the work. It further appears that, when defendant undertook to complete the work, it used certain tools and equipment belonging to plaintiffs, the rental value of which was stipulated to be $625. The defendant refused to make any further payments to plaintiffs for the work done by them before the walls fell, and plaintiffs instituted this action to recover the twenty per cent retained, the unpaid estimate, and the other items above mentioned.

On the trial, no material dispute appeared as to the facts or the amounts involved, and the trial court directed a verdict and judgment in plaintiffs' favor for $26,967.29. Plaintiffs had demanded the further sum of $2,982.15 as profits which they would have realized had they completed the contract. This item the court refused to allow, and on such refusal, plaintiffs predicate their cross-appeal.

Defendant's main contention is that it was plaintiffs' duty to complete the work in accordance with their contract. It insists that the contract was an entirety; that plaintiffs are not entitled to recover, having failed to complete it, even though it was impossible of performance, and that plaintiffs are not excused from complete performance by reason of defective plans and specifications prepared by the city engineer. It further insists that the plans were furnished by the city and not by defendant; that they were on file with the city clerk; that plaintiffs had access to them, and are in no position to insist that, by reason of defects in the plans and specifications rendering the contract impossible of performance, they are exonerated from performing their work; that, not being so exonerated, and having failed to complete their contract, they are not entitled to recover the twenty per cent of estimates withheld, or to recover upon the other demands presented in their complaint.

In support of its contention that plaintiffs were compelled to finish the work in accordance with the defective plans and

specifications, and must suffer any loss occasioned by the fall-
ing of the wall, the defendant, with other citations, directs
our attention to *American Surety Co. v. San Antonio Loan &
Trust Co.* (Tex. Civ. App.), 98 S. W. 387, and *Lonergan v.
San Antonio Loan & Trust Co.* (Tex.), 104 S. W. 1061, the
cases mentioned being the ones upon which it places its main
reliance.   These Texas cases seem to support defendant's
contention; but, from the doctrine there announced, we with-
hold our consent, believing it illogical, contrary to our pre-
vious rulings, and in conflict with decisions from other courts
which we are constrained to follow.   In *Ward v. Pantages*,
73 Wash. 208, 131 Pac. 642, the plaintiffs, as contractors, in-
stalled a plumbing system and a heating plant in defendants'
building in strict compliance with plans and specifications
prepared by an architect whom defendants had employed.
The work proved unsatisfactory.   Holding that plaintiffs
were entitled to recover, and citing the case of *MacKnight
Flintic Stone Co. v. Mayor etc.*, 160 N. Y. 72, 54 N. E. 661,
to which reference is hereinafter made, we said:

"Appellants earnestly contend that the systems adopted,
especially for the heating plant, were suggested and war-
ranted by respondents.   This respondents deny.   The evi-
dence upon the issue thus raised was resolved by the trial
court in respondents' favor.   If, as respondents contend, and
the trial court properly found, the plans were adopted by
appellants' architects, all that the respondents can be held to
have warranted was that they would install the systems in a
workmanlike manner, in strict compliance with the adopted
plans, and there is sufficient evidence to sustain the finding
that this was done.   We conclude from the evidence that re-
spondents made no warranty of the systems adopted, but that
their only warranty was to install them in strict compliance
with the plans and specifications, which they did.

" 'Where the builder performs his work strictly in conform-
ity with plans and specifications, he is not liable for defects in
the work that are due to faulty structural requirements con-
tained in such plans and specifications, and may recover un-
der the contract, unless he has warranted that the plans and
specifications are correct.'   6 Cyc. 63."

In the record before us, there is nothing to indicate that the plaintiffs warranted the plans and specifications prepared by the city engineer. They were not civil engineers, nor did they have any special knowledge of the fact that the plans and specifications were defective or that it would be impossible to construct the improvement in accordance therewith. In *MacKnight Flintic Stone Co. v. Mayor etc., supra*, in discussing the question here presented, Vann, J., of the New York Court of Appeals, said:

"The defendant specifically selected both material and design and ran the risk of a bad result. If there was an implied warranty of sufficiency, it was made by the party who prepared the plan and specifications, because they were his work, and in calling for proposals to produce a specified result by following them, it may fairly be said to have warranted them adequate to produce that result. If I agree to produce a certain result according to my own plan, I impliedly warrant its sufficiency; but if I agree to produce that result by strictly following the plan prepared by another party, he impliedly warrants its sufficiency. The responsibility rests upon the party who fathers the plan and presents it to the other with the implied representation that it is adequate for the purpose to be accomplished. A stipulation requiring a contractor to produce a certain result by following the plan and directions of the owner is an undertaking that it can be done in that way. . . .

"It would not be reasonable to hold the parties to have intended that the plaintiff was to do a great deal of work and furnish a large quantity of materials according to the specifications of the defendant, and under the direction of its officers, with no right to vary from the materials or construction specified, and yet get no pay for it unless it produced a certain result, without very plain language to that effect, which we do not find in the instrument before us, although it is elaborate in form, and embraces the most minute details. Parties might make such an agreement, but if the language used admitted of a different construction the courts would be apt to adopt it and thus avoid the conclusion that an impossible result was intended. The fault of the defendant's plan should not prevent the plaintiff from recovering payment for

good work done and good materials furnished precisely as the defendant required. The reasonable construction of the covenant under consideration is that the plaintiff should furnish the materials and do the work according to the plan and specifications, and thus make the floors water tight so far as the plan and specifications would permit."

The learned judge then cites the following authorities, which sustain his conclusions: *Kellogg Bridge Co. v. Hamilton*, 110 U. S. 108; *MacRitchie v. Lake View*, 30 Ill. App. 393; *Filbert v. Philadelphia*, 181 Pa. St. 530, 37 Atl. 545; *Bancroft v. San Francisco Tool Co.*, 120 Cal. 228, 52 Pac. 496; *Bentley v. State*, 73 Wis. 416, 41 N. W. 338; *Cunningham v. Hall*, 86 Mass. 268; *Burke v. Dunbar*, 128 Mass. 499; *Perkins v. Roberge*, 69 N. H. 171, 39 Atl. 583; *Clark v. Pope*, 70 Ill. 128; *Rice v. Forsyth*, 41 Md. 389; *Weld v. Goldenberg*, 65 Fed. 466; *Smith v. Consumers' Cotton Oil Co.*, 86 Fed. 359; *Hoe v. Sanborn*, 21 N. Y. 552; *Byron v. Mayor, etc.*, 22 J. & S. 411.

The theory upon which defendant insists that plaintiffs, as a condition precedent to their right to recover, should have completed their contract, conceded to have been impossible of performance, is that, having contracted after seeing the plans and specifications, they impliedly warranted the sufficiency of such plans. In the absence of an express warranty incorporated in their written contract, they cannot be held to have made any warranty whatever. If a contractor cannot perform by reason of defective plans which he is required to follow, which render the contract impossible of performance, which were not prepared or provided by him, but were prepared and provided by the owner, or by his architect or engineer, there would seem to be no just reason why the contractor may not recover for work done in strict compliance with such plans and specifications, under the supervision and to the satisfaction of the owner, architect or engineer, in an attempt to perform the contract. In *Bentley v. State, supra*, the state entered into a contract with Bentley

whereby he agreed to erect additions to a public building in accordance with plans and specifications prepared and furnished by an architect employed by the state. Portions of the building fell because the plans and specifications which had been carefully followed, were defective. Thereafter, the contractor restored the building, and sued to recover for labor and material used in so doing. The state defended upon the ground that the plaintiffs, at their own cost and expense, were bound to furnish all materials and perform all work necessary to restore the construction according to new and modified plans which were adopted and followed. In other words, the state, in substance, contended that the contractors assumed the risk of the sufficiency of the original plans and specifications. Passing upon this question, the court said:

"The state undertook to furnish suitable plans and specifications, and required the plaintiffs to conform thereto, and assumed control and supervision of the execution thereof, and thereby took the risk of their efficiency. What was thus done, or omitted to be done, by the architect, must be deemed to have been done or omitted by the state. Moreover, we must hold, notwithstanding the English case cited [*Thorn v. Mayor*, L. R. 1 App. Cas. 120], that the language of the contract is such as to fairly imply an undertaking on the part of the state that such architect had sufficient learning, experience, skill, and judgment to properly perform the work thus required of him, and that such plans, drawings, and specifications were suitable and efficient for the purpose designed. There seems to be no lack of able adjudications in support of such conclusions."

The English case of *Thorn v. Mayor*, L. R. 1 App. Cas. 120, *supra*, affirms the previous decision of the court of Exchequer in the same case, reported in 9 Exch. 163, cited and followed in *American Surety Co. v. San Antonio Loan & Trust Co.*, *supra*, and was distinguished with irresistible logic in *Bentley v. State*, *supra*, from which we have quoted the foregoing excerpt. The defendant has contended that the plans and specifications were not furnished by it, but

were furnished by the city. This suggestion is immaterial, for the reason that, when the defendant contracted with the plaintiffs, it required the plaintiffs to follow the plans and specifications prepared by the city engineer, thus adopting and approving such plans as between plaintiffs and itself.

The trial court, in the final judgment, permitted the plaintiffs to recover all items demanded, as above stated, except the profits which plaintiffs claim they would have realized had they completed the contract. We do not find it necessary to enter into a detailed statement of the items allowed by the trial judge. The amounts were not in dispute. We hold that a just conclusion was reached. The plaintiffs have been permitted to recover the full value of work done by them in their attempt to fulfill a contract which was impossible of complete performance by reason of the defective plans and specifications. We see no reason why they should recover any further sum.

Other assignments of error need not be discussed. We find no prejudicial error in the record, and the judgment will be affirmed. Neither party will recover costs on this appeal.

CHADWICK, MAIN, ELLIS, and GOSE, JJ., concur.