[No. 23814. Department Two. August 11, 1932.]

H. T. THOMAS, *Appellant*, v. S. A. MOCERI, INC., *Respondent*, THE COMMERCIAL CASUALTY INSURANCE COMPANY, *Appellant*.[1]

[1]Reported in 13 P. (2d) 444.

*Jesse Thomas, J. H. Gordon, Whittemore & Truscott,* and *Harold A. Searing,* for appellants.

*Kelly & MacMahon,* for respondent.

MAIN, J.—The plaintiff brought this action to recover the balance due him upon a subcontract for state highway work. The defendant S. A. Moceri, Inc., a corporation, presented a cross-complaint in which it sought recovery against the plaintiff. The defendant Commercial Casualty Insurance Company filed an answer in which it denied liability. The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that Moceri, Inc., was entitled to recover against the plaintiff, and also against the bonding company. Judgment was entered in favor of Moceri, Inc., and against the plaintiff, as principal, in the sum of $2,714.45, and against the Commercial Casualty Insurance Company, as surety, in the sum of $1,837.69. From this judgment, the plaintiff and the Commercial Casualty Insurance Company appeal.

The facts are these: The respondent, S. A. Moceri, Inc., is a corporation organized under the laws of this state, with its principal place of business in Seattle, of which S. A. Moceri is the president and managing officer, and will be referred to herein as Moceri. The Commercial Casualty Insurance Company is a corporation organized under the laws of the state of New Jersey.

February 10, 1930, Moceri entered into a contract with the state for the performance of certain work on a portion of state highway No. 21, between Silverdale and Keyport, in Kitsap county. This work was to be done in accordance with the plans and specifications prepared by the state. April 1, 1930, Moceri entered into a contract with the appellant H. T. Thomas, whereby the latter agreed to do the excavating under the contract which Moceri had with the state. The Commercial Casualty Insurance Company was surety on the bond of Moceri to the state, and also on the bond of Thomas to Moceri. The contract of Moceri with the state, by its terms, was to be completed July 1, 1930, and Thomas was to complete his contract within a period of seventy-five days.

Thomas entered upon the performance of the work, and sometime about the middle of June, the state highway department expressed its dissatisfaction to Moceri with the progress that was being made under the Thomas contract. Moceri took the matter up with the representative of the surety company, and that representative prepared a letter to Thomas, which is exhibit 1, and which Moceri signed, to the effect that the state was not satisfied with the progress of the work, and in which letter it was said:

"We will try to perform the work with the lowest possible cost, but you are hereby advised that any expenditures over and above your contract price will be charged against you and your bonding company."

Within a day or two following this, Moceri put equipment upon the work to assist in the performance of the excavation which Thomas was to do. Thomas continued to work until about August 2nd, and thereafter the work provided for under his contract was finished by Moceri. In all, about 77,000 yards of earth were removed, and approximately one-half was excavated

by Thomas and the other half by Moceri. The state highway department extended the time of the performance of the Moceri contract to December 1st, and it was, in fact, completed sometime in March the following year.

Thomas, as above indicated, brought an action to recover the balance that he claimed was due him by reason of his contract, and for damages that he had sustained by reason of the fact that Moceri had taken over the work. Moceri, in his cross-complaint, sought to recover against Thomas $1,700 which he had been required to pay the state as a penalty, and for the outlay that he had been caused in the performance of the Thomas contract. Further facts will be stated in connection with the questions to be determined, to which they are particularly germane.

It is first contended by Thomas that the trial court erred in refusing his request for a jury trial. When the case was called to be set for trial, Thomas, by motion, asked for a jury trial. He did not at that time or at any other time, so far as the record shows, deposit with the clerk of the court twelve dollars. Under Rem. Comp. Stat., § 316, Thomas was not entitled to a jury trial unless, at or prior to the time the case was called to be set for trial, he served upon the opposite party or his attorney, and filed with the clerk of the court a statement of himself, or attorney, that he elected to have such case tried by jury, and at the same time deposited with the clerk of the court the sum of twelve dollars. Since the record fails to show that Thomas complied with this statutory requirement, the trial court did not err in refusing a jury trial.

It is next contended that the court erred in denying Thomas recovery for damages which, it was claimed, resulted from delay caused by the hauling contractors. The excavation contract of Thomas did

not include the hauling of the dirt from the steam shovel and depositing it on the highway, but the hauling contract was let to another. Thomas is precluded on this cause of action by reason of a clause in the contract which reads as follows:

"It is further understood and agreed that other sub-contractors are performing other portions of the first party's [Moceri's] contract and no penalty shall attach to the party of the first part for or on account of any delay occasioned by other sub-contractors. . . ."

Under this provision of the contract Moceri would not be answerable in damages, even though the work was delayed by reason of other subcontractors.

It is next contended that the court erred in charging Thomas with the costs incurred by Moceri for the completion of the work which Thomas had contracted to do. The contract contained a provision that, in the event that the progress of the work undertaken by Thomas was unsatisfactory to the state engineer or to Moceri, then Moceri had a right to

". . . proceed to take over the work remaining to be done under this contract and complete same with its own employes, using the equipment of the second party, charging the same from any money due to said second party."

Upon the question as to whether the delay was due to Thomas in making the excavation by use of a steam shovel, or whether the delay was due to the failure of the hauling contractor to furnish sufficient trucks to take the dirt away, the evidence was in direct conflict. A number of witnesses testified that the delay was due to the operation of the steam shovel or steam shovels, and a number of others testified that the delay was due to the inadequacy of the trucks furnished to perform the hauling. After considering this testimony, as it

appears in the record, we see no reason for disturbing the holding of the trial court. The conclusion on this question therefore is that the charges made by Moceri to Thomas for completing the work and which the trial court allowed were proper and should be sustained.

It is next contended that the court erred in charging to Thomas the $1,700 penalty imposed by the state upon Moceri. The testimony upon this item was given by Moceri, and was as follows:

"Mr. Wynn [bond company's agent] dictated defendant's Exhibit '1'. After I had completed the work Mr. Thomas was to perform under his contract, I had a further talk with Mr. Wynn about bringing suit against the company, and he said, 'You don't need to be in a hurry. You have got lots of time for that.' The state was charging us a $12,000 penalty on the job. He got the state to release me of the penalty. The contract provides a penalty of $25 a day. There was a penalty also for engineering charges of $1,700, which was over and above the state's appropriation on that particular job. They said they couldn't release that on account of being money expended on engineering, and we would have to pay that. This $1,700 was deducted from our final estimate check."

There is no other testimony as to what this engineering charge was. The highway engineer and no member of his department were called by either party to testify. The trial court made this finding:

"That on or about the 1st day of August, 1930, the plaintiff H. T. Thomas ceased his operations under the said contract and that the same was substantially completed by the defendant S. A. Moceri, Inc., on the 20th day of November, 1930, but there remained a small amount of work to be done under said contract of the plaintiff H. T. Thomas which the said defendant S. A. Moceri, Inc., did not complete until the month of March, 1931."

From this finding, it appears that Moceri did not complete the Thomas contract until November 20,

1930. Under Thomas's contract, he was to complete the work in seventy-five days, which, if it had been performed, would have been approximately June 15th. Moceri came on the job with his equipment about June 18th, and, as above stated, each of them removed about one-half of the 77,000 yards of earth. It thus appears that one-half of the work, which Thomas was to do in seventy-five days and which Moceri performed, extended over a period of approximately five months. The contract, as above stated, of Moceri with the state had been extended to December 1st. Moceri testified that he was delayed in getting gravel for the highway, and said: "I could not get enough gravel to work expeditiously."

It may be that part of the $1,700 engineering charge exacted by the state was due to the delay of Thomas, but it seems to us that it cannot all be charged to him. Moceri, according to the finding of the trial court, took more time to perform one-half of the excavation than was allowed in Thomas's contract for all of it. Part of the delay was caused by the failure to get gravel. Obviously, no charge should be made to Thomas for any delay which he did not cause.

What portion of the $1,700 engineering charge exacted by the state arose by reason of the delay caused by Thomas, and what portion arose by reason of delay caused by Moceri, does not appear. Moceri had the affirmative upon this question, and it was for him to show that the entire cause of delay was due to Thomas before there could be charged to him the entire penalty for the delay. Since we are of the view that this entire item should not be charged to Thomas, and there is no showing as to what portion should be charged to him and what Moceri should bear, it necessarily follows

that this item should be eliminated and should not be charged against Thomas in the judgment.

It is next contended by the Commercial Casualty Insurance Company that no judgment should have been entered against it because the action was not instituted within the time specified in the bond. The bond in this case is an indemnity against loss and not an indemnity against liability. It contained a provision that no action or suit should be had or maintained thereon unless the same be brought or instituted within six months after the principal (Thomas) shall cease performing the work mentioned in the contract. Within the limitation of time provided in this contract, it was not reasonably possible, under the facts of this case, to determine the liability upon the bond, if any. Under the holding of this court in the case of *Sheard v. United States Fidelity & Guaranty Co.*, 58 Wash. 29, 107 Pac. 1024, 109 Pac. 276, upon a similar bond, the surety company did not have a right to invoke as a defense the time limitation fixed in the bond.

The cause will be remanded to the superior court, with direction to modify the judgment as to the $1,700 item, as above indicated.

TOLMAN, C. J., BEALS, HOLCOMB, and MILLARD, JJ., concur.