[No. 34435. Department One. September 4, 1958.]

JOHN J. HOYE et al., *Respondents*, v. CENTURY BUILDERS, INC., *Appellant.*[1]

[1]Reported in 329 P. (2d) 474.

*Morrissey, Hedrick & Dunham* and *Robert K. Waitt*, for appellant.

*Stone, Hoover & Lind*, for respondent.

FOSTER, J.—Respondents, plaintiffs below, sued appellant, defendant below, to recover the purchase price of a lot plus the money paid on a contract with the appellant for the construction of a house on that lot.

The prayer of the complaint is:

"WHEREFORE, plaintiffs pray that the court enter an order rescinding said contract and a judgment against the defendant for the sum of Eleven Thousand Four Hundred Ninety-four and 32/100 ($11,494.32) Dollars, for costs of suit, and for such other and further relief as to the court seems just and proper."

The controlling fact is stated in the appellant's brief in the following words:

" . . . On or about May 9, 1954, plaintiff and his wife visited the area wherein Century Builders, Inc. owned lots which were available for construction purposes. At this time Mr. and Mrs. Hoye were accompanied by a salesman of the defendant, and at or near this date made their selection of a lot from the many which were available. After Mr. and Mrs. Hoye made their choice of lots, they proceeded to the office of Century Builders, Inc., and chose one of many house plans which in the interest of economy to the customer, were made available by Century Builders, Inc., and at the same time executed an agreement that they would purchase the lot and that Century Builders would construct thereon the house of their choosing, with certain variations and additions."

Thus it is, in the language of the appellant's own counsel, that the respondents employed appellant to build a new house for them. It was in no sense the sale of a house already built.

The court found that, in the appellant's contract to build a home for the respondents, there was an implied warranty that it would be fit for human habitation. We agree. The measure of damages applied was the difference in value between the house in its uninhabitable condition and its value

had it been properly constructed, less certain credits to the appellant not here material.

■ Appellant's first claim of error is that the trial court denied it a right to trial by jury. The argument is that the case was a suit in equity for rescission in which there is no right to trial by jury, but that such right came into being during the course of the trial when, it is claimed, the proceeding metamorphosed from a suit in equity to an action at law.[2] It is unnecessary to decide whether a case for rescission is a suit in equity or an action at law because the whole and complete answer to this assignment of error is that the appellant never filed a demand for jury as required by RCW 4.44.100. Unless such demand be timely filed, trial by jury is waived.[3]

In the language of the appellant's counsel, the principal question raised is stated as follows:

"Whether or not there is an implied warranty of fitness for habitation of a custom-built dwelling house where the contract only called for work, labor and materials by the building contractor, and whether or not there is an implied warranty of fitness for habitation of any dwelling?"

Without so holding, it may be assumed, for present purposes, that the doctrine of *caveat emptor* applies to sales of real property and that, if the case presented the sale of a new, but nevertheless completed, house, there would be no implied warranty of fitness.[4] The appellant thus states the issue in the following sentence:

" . . . Thus, the construction contract in question, being a contract for work, labor and materials, and not a sale, there can certainly be no 'implied warranty of fitness' for any purpose intended in any event."

---

[2] See the annotation 95 A. L. R. 1000, entitled "Action involving rescission or right to rescind contract and to recover amount paid thereunder as one at law or in equity."

[3] " . . . Unless such statement is filed and such deposit made, the parties shall be deemed to have waived trial by jury, and consented to a trial by the court. . . . " RCW 4.44.100. *Miller v. Cascade Canning Co.,* 173 Wash. 211, 22 P. (2d) 657; *Thomas v. S. A. Moceri, Inc.,* 169 Wash. 219, 13 P. (2d) 444.

[4] Right of Purchaser in Sale of Defective House, 4 Western Reserve L. Rev. 357 (1953).

■ That issue was resolved adversely to the appellant's contention by *White v. Mitchell*, 123 Wash. 630, 213 Pac. 10. A contract to construct a new dwelling is one for work, labor and materials. Appellant held itself out as an experienced builder. It furnished the plans for the house. We have no hesitancy in saying, under the circumstances, the trial court was correct in holding that there was an implied warranty that the completed house would be fit for human habitation. The law is so stated in 38 Am. Jur. 661, § 20, and 17 C. J. S. 781, § 329. The supreme court of South Carolina recently summarized the applicable rule of law in the following passage from its opinion in *Hill v. Polar Pantries*, 219 S. C. 263, 64 S. E. (2d) 885, 25 A. L. R. (2d) 1080:

"It seems to be well settled that where 'a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work which he undertakes shall be of proper workmanship and reasonable fitness for its intended use, and, if a party furnishes specifications and plans for a contractor to follow in a construction job, he thereby impliedly warrants their sufficiency for the purpose in view.' 17 C. J. S., contracts, § 329, page 781. These principles have been applied to building contracts. *Minemount Realty Co., Inc. v. Ballentine*, 111 N. J. Eq. 398, 162 A. 594; *General Fireproofing Co. v. L. Wallace & Son*, 8 Cir., 175 F. 650; *Kennedy v. Bowling*, 319 Mo. 401, 4 S. W. (2d) 438. . . ."

This court said in *McConnell v. Gordon Constr. Co.*, 105 Wash. 659, 178 Pac. 823:

". . . Where either party to a building contract agrees to furnish, and does furnish, the plans for a building, he thereby guarantees their sufficiency for the purpose. *Huetter v. Warehouse & Realty Co.*, 81 Wash. 331, 142 Pac. 675, L. R. A. 1915C 671. . . ."

The uniform current of decisional law in the United States is in accord. Some of the more recent cases are collected in the margin.[5] Such, likewise, is the law in England. It is

---

[5] 4 Williston on Contracts 2792, 2793, § 1014; *Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co.*, 111 F. (2d) 875; *Montrose Contracting Co. v. County of Westchester*, 80 F. (2d) 841; *Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp.*, 49 F. (2d) 146; *Roscoe Moss Co. v. Jenkins*, 55 Cal. App. (2d) 369, 130 P. (2d) 477; *Kuitems v. Covell*, 104

stated in 29 Halsbury's Laws of England (2d ed.) 464, 465, part 9, § 669, note r, as follows:

". . . . But it is otherwise if he sells a house to be erected or in course of erection, and then there is an implied warranty that it will be properly constructed and fit for habitation (*Miller v. Cannon Hill Estates, Ltd.*, [1931] 2 K. B. 123; Digest Supp.; *Perry v. Sharon Development Co., Ltd.*, [1937] 4 All E. R. 390, C. A., Digest Supp.)."

In 1955, the Queen's Bench division of the high court of appeal in *Jennings v. Tavener* (1955), 2 All Eng. R. 769, 1 Weekly L. R. 932, had occasion to review the entire English law on the subject and reached the same result. The reason is nowhere better explained than by the King's Bench Division in *Miller v. Cannon Hill Estates, Ltd.* (1931), 2 K. B. 113, in the following passage from the opinion in that case:

". . . The position is quite different when you contract with a builder or with the owners of a building estate in course of development that they shall build a house for you or that you shall buy a house which is then in the course of erection by them. There the whole object, as both parties know, is that there shall be erected a house in which the intended purchaser shall come to live. It is the very nature and essence of the transaction between the parties that he will have a house put up there which is fit for him to come into as a dwelling-house. It is plain that in those circumstances there is an implication of law that the house shall be reasonably fit for the purpose for which it is required, that is for human dwelling. . . ."

---

Cal. App. (2d) 482, 231 P. (2d) 552; *Garden City Floral Co. v. Hunt*, 126 Mont. 537, 255 P. (2d) 352; *Mumon v. Stevens*, 162 Neb. 339, 76 N. W. (2d) 232; *Lincoln Stone & Supply Co. v. Ludwig*, 94 Neb. 722, 144 N. W. 782; *Andriola v. Milligan*, 52 N. M. 65, 191 P. (2d) 716; *Glass v. Wiesner*, 172 Kan. 133, 238 P. (2d) 712; *Jose-Balz Co. v. DeWitt*, 93 Ind. App. 672, 176 N. E. 864; *Phillips v. Wick* (Tex. Civ. App.), 288 S. W. (2d) 899; *Metropolitan Cas. Co. v. Medina Rural High School Dist. No. 5* (Tex. Civ. App.), 53 S. W. (2d) 1026; *Cox v. Curnutt* (Okla.), 271 P. (2d) 342; *Glens Falls Ins. Co. v. Standard Oil Co.* (Ohio App.), 127 N. E. (2d) 46; *Baerveldt & Honig Constr. Co. v. Szombathy*, 365 Mo. 845, 289 S. W. (2d) 116; *R. Krevolin & Co. v. Brown*, 20 N. J. Super. Ct. 85, 89 A. (2d) 255; *George v. Goldman*, 333 Mass. 496, 131 N. E. (2d) 772; *Hall v. MacLeod*, 191 Va. 665, 62 S. E. (2d) 42; *Barraque v. Neff*, 202 La. 360, 11 So. (2d) 697.

■■ There remains for consideration the correct measure of damage. The difference in value rule is proper in a building contract if there has not been substantial performance. It hardly requires demonstration that there is no substantial performance if the house, when completed, is unfit for human habitation by reason of the discharge of raw sewage, which condition stubbornly resists correction. *White v. Mitchell, supra; Forrester v. Craddock,* 51 Wn. (2d) 315, 317 P. (2d) 1077; *Kenney v. Abraham,* 199 Wash. 167, 90 P. (2d) 713; *Eckhardt v. Harder,* 160 Wash. 207, 294 Pac. 981.

We find the assignments of error without merit, and the judgment is, therefore, affirmed.

HILL, C. J., MALLERY, FINLEY, and HUNTER, JJ., concur.

