Wayne R. ROPER, Plaintiff–Appellee,

v.

SPRING LAKE DEVELOPMENT COMPANY, a Colorado general partnership, Defendant,

and

The Cumberland Companies, Inc., a Colorado corporation, Defendant–Appellant.

No. 88CA1169.

Colorado Court of Appeals, Div. V.

Feb. 15, 1990.

Richard P. Ranson, P.C., Richard P. Ranson, Colorado Springs, for plaintiff-appellee.

The Law Offices of Dayton Denious, Dayton Denious and Robinson, Waters, O'Dorisio and Rapson, William P. Denious, Denver, for defendant-appellant.

Opinion by Judge DUBOFSKY.

In this action premised on an alleged breach of the warranty of habitability, defendant, Cumberland Companies, Inc., appeals the judgment entered in favor of plaintiff, Wayne Roper, rescinding a contract for the sale of a townhome. We affirm in part and reverse in part.

On October 23, 1982, plaintiff contracted to purchase a townhome with an attached garage from defendant who was the developer of the subdivision in which the townhome was located. Primarily because of plaintiff's financial problems, the initial closing did not occur until December 1, 1983.

During the time between the signing of the contract and the closing, plaintiff became aware of a foul odor located in the garage. Initially, both parties assumed the odor resulted from a minor and therefore easily resolvable problem, *i.e.*, dead animals located in the vicinity of the garage. However, none of the efforts of the parties to locate and eliminate the odor were successful. Plaintiff testified that, at closing, based on representations by defendant's employees and his own view of the situation, he still believed the problem was minor and easily solvable.

Plaintiff filed a complaint against defendant in October 1985, which alleged one count of negligence. Initially, the trial was scheduled for November of 1986, but after the court granted plaintiff's motion to amend his complaint to add the legal theory of implied warranty of habitability, the case was continued and the trial was held in November 1987. The amended complaint was filed on December 15, 1986.

I.

■ Defendant argues that plaintiff's claim of breach of implied warranty of habitability is barred by the applicable statute of limitations. We disagree.

Defendant claims that, under Colo.Sess. Laws 1979, ch.· 144, § 13–80–127, then in effect, plaintiff had, at most, two years after the closing to begin an action premised on the implied warranty of habitability. Section 13–80–127 limited to two years the time in which an action, based on either contract or tort, could be· brought against builders or builder-vendors after the builder has performed or finished the construction, or made improvement to the real property.

At trial, plaintiff testified he determined there was a defect in April of 1984. If we accept plaintiff's testimony as establishing when the two-year period specified in the statute began to run, then the implied warranty of habitability claim, which was filed on December 15, 1986, was beyond the two years permitted by § 13–80–127.

However, the trial court determined that, under C.R.C.P. 15(c), the amended complaint relates back to the initial filing date of the original complaint and, therefore, the statute of limitations is not a bar. We agree with that analysis.

Here, the facts underlying both the negligence and the implied warranty of habitability claims are virtually identical and arose out of the same transaction or occurrence; that is, the building of a home that had a foul odor associated with it which compromised its use and value. Thus, the claims were sufficiently similar so that defendants were on legal notice of the factual basis for both the negligence and breach of implied warranty claims as of the original October 23, 1985, filing date. Consequently, the criterion for the applicability of C.R.C.P. 15(c) was present here.

Without discussing C.R.C.P. 15(c), the court in *Platte Valley Motor Co. v. Wagner*, 130 Colo. 365, 278 P.2d 870 (1955) determined that since the underlying factual basis of the claim at issue there was the same for a different legal claim, the amended complaint related back to the time the original complaint was filed, and therefore, the statute of limitations was not a bar.

The federal courts which have considered this issue have also held that a new legal claim which meets the requirements of Fed.R.Civ.P. 15(c), which is identical to C.R.C.P. 15(c), relates back to the time of filing the original complaint. An amendment is therefore saved by the relation back and is not time barred by the statute of limitations. *Tiller v. Atlantic Coast Line R.R. Co.*, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945); *Denver & Rio Grande Western R.R. v. Clint*, 235 F.2d 445 (10th Cir.1956); *Martin v. Virgin Islands National Bank*, 455 F.2d 985 (3rd Cir.1972); *see also* 3 *Moore's Federal Practice* 15.15[3] (2 ed. 1989); 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1496 (1971); J. Friedenthal, M. Kane & A. Miller, *Civil Procedure* § 5.27 (1985).

■ Here, there was a mere change in the legal theory of the case, and under such circumstances, the amendment relates back to the original filing date. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479 (6th Cir.1973); *United States v. Johnson*, 288 F.2d 40 (5th Cir.1961). Moreover, amendments to the pleadings relate back when the legal theory of a case shifts from contract to tort or vice versa. *Hood v. P. Ballantine & Sons*, 38 F.R.D. 502 (S.D.N.Y.1965) (negligence to warranty).

Defendant, however, asserts that *Even v. Longmont United Hospital Ass'n*, 629 P.2d 1100 (Colo.App.1981) and *In re Estate of Tally*, 654 P.2d 866 (Colo.App.1982) are dispositive of this issue because they hold that an amendment under C.R.C.P. 15(c) does not save a claim when the statute of limitations has already expired. Upon examination of those cases, we conclude that they are factually distinguishable, did not meet the requirements of C.R.C.P. 15(c), or depended on specific statutes and rules not applicable here.

## II.

Defendant next argues that the mere existence of a foul odor in the garage does not constitute a breach of the implied warranty of habitability. Defendant argues that there must be structural damage to the house or the odor must emit from the construction itself. Defendant also argues that the implied warranty of habitability claim fails because the odor is in the garage and not the house. We disagree.

■ The contractual responsibilities of the builder of a new house which are implicit in the concept "implied warranty of habitability" include the buyer's right to *both* a home that is built in a workmanlike manner *and* one that is suitable for habitation. *Carpenter v. Donohoe*, 154 Colo. 78, 388 P.2d 399 (1964). In *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo. 1983), the court likened the implied warranty of habitability to strict liability for construction defects. In *Sloat v. Matheny*, 625 P.2d 1031 (Colo.1981) the court stated:

"The position of the builder-vendor, as compared to the buyer, dictates that the builder bear the risk that the house is fit for its intended use."

These cases strongly indicate that prior case law did not require the buyer to prove both that the house was not built in a workmanlike manner and that it was unsuitable for habitation. Thus, a buyer is entitled to relief based on the theory of implied warranty of habitability if he proves the house was not built in a workmanlike manner or that it was not suitable for habitation. *See Carpenter v. Donohoe, supra.*

Courts in other jurisdictions have extended implied warranty of habitability to situations in which the house is defective or unhabitable for reasons other than the workmanship in constructing the house. *See McDonald v. Mianecki*, 79 N.J. 275, 398 A.2d 1283 (1979) (well water not potable and bad odor present); *Jeanguneat v. Jackie Hames Construction Co.*, 576 P.2d 761 (Okla.1978) (bad well water); *Bethlah-*

*my v. Bechtel,* 91 Idaho 55, 415 P.2d 698 (1966) (basement flooded periodically and offensive odor forced inhabitants to move out); *Park v. Sohn,* 89 Ill.2d 453, 60 Ill. Dec. 609, 433 N.E.2d 651 (1982) (water puddles formed in crawl space causing odors); *Kirk v. Ridgway,* 373 N.W.2d 491 (Iowa 1985) (peeling paint on exterior of house); *Waggoner v. Midwestern Development, Inc.,* 83 S.D. 57, 154 N.W.2d 803 (1967) (high water table caused water to seep into basement); *Hoye v. Century Builders,* 52 Wash.2d 830, 329 P.2d 474 (1958) (continual discharge of raw sewage); *Pickler v. Fisher,* 7 Ark.App. 125, 644 S.W.2d 644 (1983).

Also, there are several Colorado cases in which, even though construction was adequate, the warranty of habitability was held to be breached when outside forces, such as expanding soil caused the house to become unhabitable. *See Glisan v. Smolenske,* 153 Colo. 274, 387 P.2d 260 (1963); *Wall v. Foster Petroleum Co.,* 791 P.2d 1148 (Colo.App.1989). In these cases, it was primarily the locational decision of the builder/vendor which made the home unlivable and thereby breached the implied warranty of habitability.

■ At trial, the evidence indicated that there were three primary potential sources of the odor: (1) the construction materials (*e.g.,* sour drywall in the garage); (2) dead animals, soil, etc.; (3) materials of third parties in the immediate vicinity (*e.g.,* gas lines). Here, defendant had control and choice of the construction materials and the site of the garage and home.

Furthermore, the garage was an integral part of the home as purchased. In addition to providing the enclosed parking for an owner or renter's car, it also provided additional storage and work space. When, as here, a garage is built and sold as an integral part of the purchase of the house, we conclude that the doctrine of implied warranty of habitability applies to it. *See Cox v. Curnutt,* 271 P.2d 342 (Okla.1954); *Schulze v. C & H Builders,* 761 S.W.2d 219 (Mo.App.1988).

Thus, we conclude, as did the trial court, that an odor which permeates a garage that was purchased as an integral part of a home, and which causes the garage to be unusable for substantial parts of the year, provides a sufficient basis for application of the doctrine of implied warranty of habitability.

### III.

■ Defendant next argues that the trial court improperly entered a judgment of rescission in this case. We agree.

Here, neither the original nor amended complaint requested rescission, and prior to the court ordering rescission, a demand for it had not been made by the plaintiff. After concluding that the cause of the odor could not be determined from the evidence at trial, and that an award of damages to repair the problem would be speculative, the trial court, *sua sponte,* decided to rescind the contract.

Traditionally, rescission has been an equitable remedy granted to a party claiming the product it received was so defective it could not be repaired and that, therefore, damages were inadequate. *See Alfred Brown Co. v. Johnson–Gibbons & Reed Western Paving–Kemper,* 695 P.2d 746 (Colo.App.1984); *Gaubatz v. Marquette Minerals, Inc.,* 688 P.2d 1128 (Colo.App. 1984).

Here, since a timely demand for rescission did not occur, the proper election of remedies was not made. *Gibraltar Colorado Life Co. v. Brink,* 113 Colo. 304, 157 P.2d 134 (1945). Furthermore, since the timely election between contract damages and rescission is incumbent upon the parties, in the absence thereof, it was improper for the trial court to rescind the contract.

■ Typically, a breach of implied warranty of habitability claim is one for damages. Here, since the cost of repair could not be determined, the proper measure of damages is the difference between the value of the home without and with the odor in the garage. *See Hoye v. Century Builders, supra; see also Sanford v. Kobey Brothers Construction Corp.,* 689 P.2d 724 (Colo.App.1984).

That part of the judgment ruling that the action was not barred by the statute of limitations and that the existence of the odor was a breach of the warranty of habitability is affirmed. That part of the judgment rescinding the contract of sale is reversed. The cause is remanded for a determination of an award of damages based on the difference between the value of the property without a defect (odor) and the value of the property with the defect. This determination may be based upon the present record or such additional evidence as the court deems necessary.

JONES and RULAND, JJ., concur.