[No. 10583.    Department One.    April 28, 1913.]

JOHN J. WARD et al., Respondents, v. ALEXANDER PANTAGES
et al., Appellants.[1]

MECHANICS' LIEN—RIGHT TO LIEN—PERFORMANCE OF CONTRACT—
DEFECTS.    Where subcontractors installed plumbing and a heating
plant strictly in conformity with plans and specifications, as re-
quired by the architects and their contract, and did not warrant the
system, defects due to the fault of the architects or plan will not
defeat the right to a mechanics' lien.

Appeal from a judgment of the superior court for King
county, Kauffman, J., entered January 25, 1912, upon find-
ings in favor of the plaintiffs, after a trial on the merits
before the court without a jury, in consolidated actions to
enforce mechanics' liens.    Affirmed.

[1]Reported in 131 Pac. 642.

*John E. Ryan* and *Grover E. Desmond,* for appellants.
*John W. Roberts,* for respondents.

CROW, C. J.—Two actions to foreclose liens upon real estate in the city of Seattle were commenced by John J. Ward and John A. Scherer, copartners as Ward & Scherer, against Alexander Pantages, Lois Pantages, his wife, E. Horton, and others. In the first action plaintiffs claimed a balance due upon a plumbing contract, and in the second a balance due upon a heating contract. The actions were consolidated and tried together. In 1909 the defendants Pantages and wife built a residence in the city of Seattle. The plans and specifications were prepared by their architects, under whose superintendence the building was erected. Plaintiffs, as subcontractors, agreed to install the plumbing in accordance with the plans and specifications, which called for the installation of toilets of a certain type. Plaintiffs also contracted to install the heating plant. Defendants contend that the toilets were improperly installed; that they could not be used; and that it was necessary to replace them with toilets of a different type. They also contend that the heating plant was defective; that the adopted system, which was suggested and guaranteed by plaintiffs, was improper and insufficient; and that extensive changes had to be made before it would do satisfactory work. Counterclaims for damages were pleaded by defendants in each action. The trial court made findings upon which a final judgment of foreclosure was entered in plaintiffs' favor for $326.08, with interest and attorney's fees, upon the plumbing contract, and for $1,391.02, with interest and attorney's fees, upon the heating contract, including some extras. The defendants Pantages and wife have appealed.

After a careful examination of the pleadings and evidence we conclude that issues of fact only are involved. The substance of appellants' contention is that the respondents did not perform the work of plumbing in a workmanlike and

skillful manner; and that, as to the heating plant, the system suggested and warranted by them was defective and insufficient. Respondents contend, as to the plumbing, that the architects specified the toilets to be installed; that those specified were not practical for dwelling houses; that respondents installed them as specified; that appellants and their architects insisted upon the particular type adopted; that respondents followed their instructions; that the toilets afterwards proved to be fundamentally wrong; and that appellants did not attempt to repair them, but removed them and substituted others. As to the heating plant, respondents contend, that they notified appellants and their architects that the plans adopted were not practicable; that certain air chambers, constructed under the architects' direction, were of insufficient size; that respondents in all respects followed the architects' directions; and that the fault, if any, was not respondents, but that of the architects.

The trial court, in substance, found, that respondents, as subcontractors, entered into a verbal agreement for the installation of the plumbing; that, in pursuance thereof, they performed the work, furnished material, and installed the system; that work was completed on December 4, 1909, in accordance with the specifications prepared by appellants' architects who were in charge of the work; and that, if the plumbing system failed, the fault was not respondents, but was due either to defective plans and specifications, or to improper and erroneous instructions given to respondents by the architects. The court further found that, prior to May 10, 1909, respondents entered into a contract with appellants and their architects for the installation of the heating plant, in accordance with the plans and specifications, which have at all times been, and are now, in appellants' possession; that respondents followed all instructions of the architects, who were in charge of the work; that respondents advanced their time and money in good faith; that the work which they did was done in a workmanlike manner; and that if, as it was

originally installed, the heating plant failed to perform its functions, such failure was solely the fault of the architects, who were appellants' agents.

Appellants earnestly contend that the systems adopted, especially for the heating plant, were suggested and warranted by respondents. This respondents deny. The evidence upon the issue thus raised was resolved by the trial court in respondents' favor. If, as respondents contend, and the trial court properly found, the plans were adopted by appellants' architects, all that the respondents can be held to have warranted was that they would install the systems in a workmanlike manner, in strict compliance with the adopted plans, and there is sufficient evidence to sustain the finding that this was done. We conclude from the evidence that respondents made no warranty of the systems adopted, but that their only warranty was to install them in strict compliance with the plans and specifications, which they did.

"Where the builder performs his work strictly in conformity with plans and specifications, he is not liable for defects in the work that are due to faulty structural requirements contained in such plans and specifications, and may recover under the contract, unless he has warranted that the plans and specifications are correct." 6 Cyc. 63.

See, also, *MacKnight Flintic Stone Co. v. Mayor etc.*, 160 N. Y. 72, 54 N. E. 661; *Tide Water Bldg. Co. v. Hammond*, 144 App. Div. 920, 129 N. Y. Supp. 355.

In *Rosenblum v. New York Butchers' Dressed Meat Co.*, 61 Misc. Rep. 263, 113 N. Y. Supp. 604, the plaintiff entered into a contract whereby he agreed to construct folding lift gates across a street and sidewalk, according to certain specifications, and further contracted that the gates should be of first-class workmanship and material, and should operate satisfactorily when erected. The gates were constructed in strict compliance with the plans and specifications, but proved to be a failure in their operation. In reversing a judgment against the contractor, Ford J. said:

"Defendant contends that the agreement of the plaintiff that the gates "shall operate satisfactorily when erected" is absolute and covers the practicability of the structure. The plaintiff insists that the agreement was satisfied when he produced gates that would operate as well as any such gates could be made to operate. The former contention goes to the design as well as to the actual construction, the latter throws the responsibility of the design onto the defendants and charges the plaintiff only with the obligations of proper materials, workmanship, and construction according to that design. It seems to me that the plaintiff's contention is the more reasonable one both in the light of the evidence adduced by the plaintiff—the only evidence we have before us on this appeal—and on the authority of *MacKnight Flintic Stone Co. v. Mayor etc.*, 160 N. Y. 72, 54 N. E. 661, the judgment should be reversed."

The evidence before us sustains a finding that respondents completed their contracts in strict accordance with the plans and specifications.

The judgment is affirmed.

MOUNT, GOSE, and PARKER, JJ., concur.