[No. 17536. Department One. February 21, 1923.]

MARY E. WHITE *et al., Appellants*, v. AMOS MITCHELL *et al., Respondents.*[1]

CONTRACTS (149)—BUILDING CONTRACTS — BREACH — EXCUSE FOR NONPERFORMANCE OR DEFECTS. Contractors undertaking to build a house complete, do not substantially perform the contract, because the variations from the contract are not relatively small and inadvertent, where they put in a defective concrete foundation wall which sank and allowed the building to sag out of level, water collected in the basement, there was nothing to show that the soil was such as to prevent constructing a house that would be reasonably level, and it would cost about $2,500 to put it in the condition it should have been in.

SAME (149). The fact that the specifications drawn by the builders made provision for certain expense for drainage, which the owners did not want to stand because they believed the water would take care of itself, does not relieve the builders where they were bound to anticipate that water would be present in the basement and to take that into consideration, because it was part of their contract.

DAMAGES (69, 71)—MEASURE OF DAMAGES—BREACH OF BUILDING CONTRACT—DEFECTS IN PERFORMANCE. Where there was not a substantial performance of a contract to construct a building, the measure of damages is the difference between the value of the building as constructed, and its value had it been constructed in accordance with the contract.

[1]Reported in 213 Pac. 10.

CONTRACTS (151)—BUILDING CONTRACTS—BREACH—WAIVER OF DE-
FECTS—ESTOPPEL. The owners of a building are not estopped to
object to failure to substantially perform the contract, by express-
ing a desire to have the house completed so that they could move
into it, notwithstanding unfavorable weather and water conditions,
where they did not know of the defects of the effect of the water.

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered September 22, 1921,
upon findings in favor of the defendants, in an action
on contract, tried to the court. Reversed.

*W. E. Gwynn* and *Remann & Gordon,* for appellants.
*A. O. Burmeister* and *J. H. Gordon,* for respondents.

BRIDGES, J.—The plaintiffs, who are sisters, owned
a small tract of land near the town of Sumner, in this
state, on which they desired to construct a dwelling.
The defendants are experienced housebuilders, resid-
ing in the city of Tacoma. About the 1st of Septem-
ber, 1920, the plaintiffs entered into a contract with
the defendants for the construction of such dwelling.
This contract was partly in writing and partly oral.
There were some drawings and some written speci-
fications. The house was to be a two-story building,
of a certain size and of a certain class of material,
and the finishing of the building was to be of a desig-
nated kind, and, in general, the construction and finish-
ing work were to be of the same general character as
those in a certain dwelling in the city of Tacoma with
which all the parties were acquainted. The house was
to rest on a concrete foundation, allowing for a large
basement. The contract price was somewhat less
than $4,000, and payments were to be made in install-
ments as the work progressed. About the last of the
year 1920, the defendants considered the building com-
pleted and offered to turn it over to the plaintiffs.
At that time all of the contract price had been paid

except some $400 or $500. The plaintiffs, believing that the house had not been constructed according to agreement, not only refused to pay the balance of the contract price, but brought suit for damages in the sum of $2,500. The court, who tried the case without a jury, allowed plaintiffs damages in the sum of $250, and gave judgment to the defendants for the balance of the contract price. The plaintiffs have appealed.

A reading of the testimony shows quite conclusively that the materials used in the construction of the house were such as the contract provided for, but it also shows that, when the respondents offered to turn the house over as completed, it had at least four material defects: First, there was some poor work which resulted in some of the windows and doors not being properly constructed, the septic tank not being in accordance with the agreement, and other minor defects, all of which, for a reasonably small sum, could be remedied; second, the southwest corner of the house was some three or four inches lower than the other portions; third, the lower floor of the house was generally uneven and materially out of level. This last condition was caused by the following circumstances: girders bearing a large portion of the weight of the house ran from each side thereof to the center and rested upon a post, the lower end of which rested upon a concrete slab placed in the bottom of the basement. During construction this slab broke, and thus let the girders sag. In an attempt to remedy this condition, the respondents jacked up the house as best they could, and built a new concrete block to replace the broken one. It was impossible, however, to remedy the matter entirely and make the flooring level, because at that time the roof was on the house, partitions had been built, and the plastering had been

done.    Fourth; the hardwood floors and interior finish had become soft, raised, uneven and colored to a material extent.

It satisfactorily appears that, when the concrete was poured, the foundation walls were level, and that the sinking at the southwest corner was the result of soft, mushy soil at that point, caused, in at least some part, by the accumulation of water in the basement, and respondents contend they should not be held responsible for the sagging condition of the foundation. It also appears with reasonable satisfaction that, throughout the process of building, from six to sixteen inches of water stood in the basement, and that this condition so softened the earth as to cause the concrete block upon which the girders rested to break and thus cause the floor to sag, and that respondents remedied this defect as best they could by jacking up the house and making a new concrete block.    Respondents contend that they cannot be held responsible for the present condition caused by water in the basement, making the ground soft and mushy.    They also contend that the damage done to the finishing materials was solely because of dampness resulting from the great quantity of water constantly in the basement, and that they ought not to be held responsible for that condition.

On the contrary, the appellants contend that the respondents contracted to construct and turn over the house in a proper condition, and that, if the defects mentioned were caused by soft ground, or by the presence of water in the basement, such would not be any excuse.

From the findings made by the trial court, it is somewhat difficult to determine upon what theory he made the plaintiffs an allowance of $250.    He finds that,

while the construction was going on, "certain waters impeded the work and there was then no way known of successfully taking the water from the basement; that they completed the structure, generally speaking, according to the plans and specifications, taking into consideration the obstacles encountered." We can account for the judgment of the lower court only upon the theory that he concluded that the respondents were not, under the circumstances, responsible for any defects in the house except those which could easily be repaired at small cost. The testimony makes it clear that the $250 allowed by the trial court would not, by any means, make the floor of the house level and repair the damage done to the interior finish because of the water standing in the basement.

There is nothing in the testimony to show that the soil was of such character as that it was impossible to put down a concrete wall which would not sink, nor is there anything to show that it was impossible to building the house without the presence of great quantities of water constantly standing in the basement. Undoubtedly, by their contract, the respondents impliedly, if not expressly, agreed to construct the house in a reasonably good and workmanlike manner. The mere fact that the ground was soft would not excuse them from the performance of their contract in a proper manner, unless it was of such character it would be impossible to construct a foundation upon it. For all that appears, a wider footing for the concrete basement would have prevented the foundation from sinking. The general rule is that a builder must substantially perform his contract according to its terms, and in the absence of contract governing the matter, he will be excused only by acts of God, impossibility of performance, or acts of the

other party to the contract preventing performance. If he wish to protect himself against the hazards of the soil, the weather, labor or other uncertain contingencies, he must do so by his contract.

In the case of *Superintendent etc. of Public Schools of Trenton v. Bennett,* 27 N. J. L. 513, 72 Am. Dec. 373, the court said:

"No rule of law is more firmly established by a long train of decisions than this: that where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. . . . . If a party, for sufficient consideration, agrees to erect and complete a building upon a particular spot, and find all the materials and do all the labor, he must erect and complete it, because he has agreed so to do. No matter what the expense, he must provide such a substruction as will sustained the building upon that spot until it is complete and delivered to the owner. If he agrees to erect a house upon a spot where it cannot be done without driving piles, he must drive them, because he has agreed to do everything necessary to erect and complete the building. If the difficulties are apparent on the surface, he must overcome them. If they are not, but become apparent by excavation, or the sinking of the building, the rule is the same. He must overcome them, and erect the building simply because he has agreed to do so—to do everything necessary for that purpose."

In the case of *Cramp & Co. v. Central Realty Corp.,* 268 Pa. St. 14, 110 Atl. 763, the court said:

"It is conceded that, under the common law rule, a contractor who undertakes an entire contract for erecting a building is presumed, in the absence of an express provision to the contrary, to have assumed the risk of unforeseen contingencies arising during the course of the work, unless performance is rendered impossible by the act of God, the law, or the

other party; . . . . Under this rule there is no implied warranty of the sufficiency of the soil to support the building to be erected, and the contractor assumes the risk of a loss incident to such defectiveness."

See, also, the following cases: *Nance v. Patterson Bldg. Co.,* 140 Ky. 564, 131 S. W. 484; *Brent v. Head, Westervelt & Co.,* 138 Iowa 146, 115 N. W. 1106, 16 L. R. A. (N. S.) 801; *Carlson v. Sheehan,* 157 Cal. 692, 109 Pac. 29.

Under the doctrine of these cases, and others like them which might be cited, it was the duty of the respondents to construct the house in accordance with the plans and specifications, and they cannot be excused therefrom because of defects in the soil or unfavorable weather conditions. It was their duty to so construct the foundation wall as that it would be level, or reasonably so, and to so construct the girders and the post on which they rested as that they would support the building and not permit it to sag, and the soft condition of the earth in the basement because of the water standing there could not relieve them from that duty. So, also, if the water in the basement caused the finishing work to be unreasonably damaged and injured, it was their duty to remedy that condition and remove the water by drainage or otherwise. Plainly, this house is far from being what it was contemplated by the parties it would be.

It is contended, however, that the appellants are responsible for at least a part of the defects, in that, when the specifications were drawn by the respondents, they made provision for certain expense for drainage, and that the appellants did not want to stand that expense because they believed "the water would take care of itself." This, however, cannot relieve the re-

spondents. By their contract, they impliedly agreed to build the house and turn it over in proper condition. It was their duty to examine into the condition of the soil and know the difficulties they might encounter. It was their duty to anticipate that water would be present in the basement, to the damage of the house. These things they were bound to take into consideration because it was a part of their contract.

We are, therefore, of the opinion that the amount allowed to the appellants by the trial court was wholly insufficient, and that in fixing appellants' damage that court should have taken into consideration all of the matters for which we hold the respondents' responsible.

The testimony shows that it would cost about $2,500 to now place the dwelling in the condition it should have been had the respondents complied with their contract; and appellants insist that we should here give judgment for that amount and thus terminate the litigation. We think appellants' idea of the measure of damage incorrect. Where the builder has substantially complied with his contract, the measure of damages to the owner would be what it would cost to complete the structure as contemplated by the contract. There is a substantial performance of a contract to construct a building where the variations from the specifications or contract are inadvertent and unimportant and may be remedied at relatively small expense and without material change of the building; but where it is necessary, in order to make the building comply with the contract, that the structure, in whole or in material part, must be changed, or there will be damage to parts of the building, or the expense of such repair will be great, then it cannot be said that there has been a substantial performance of the contract. Generally,

where there has not been such substantial performance, the measure of the owners' damage is the difference between the value of the building as constructed and its value had it been constructed in accordance with the contract. Such a recovery would be just to both parties. It is manifest that to measure the owner's damage by the cost necessary to make the building conform to the contract would often be an injustice, because in many instances such cost would amount to almost as much as the original contract price.

There appears to be some confusion in the authorities on this question, but the correct rule, we think, is laid down in vol. 28 R. C. L., page 706, where it is said:

"It may therefore be stated as a general rule that where a building contractor has substantially performed his contract, he may ordinarily recover the contract price, less a deduction to reimburse or compensate the owner for his failure fully to complete his contract. So, where the defects or omissions are of such a character as to be capable of being remedied, the proper rule for measuring the amount recoverable by the contractor is the contract price, less the reasonable cost of remedying the defects or omissions, so as to make the building conform to the contract, unless other legal damages are suffered, if any. . . . . Where the defect is so serious as not to be susceptible of remedy without depriving the contractor of adequate compensation for his labor and material, his measure of recovery is the contract price less the difference between the value of the building as completed and the building as it should have been completed."

While this rule is given as applicable to the builder, it is, upon reason, also applicable to the owner.

See, also, the following cases: *Ashland Lime, Salt & Cement Co. v. Shores,* 105 Wis. 122, 81 N. W. 136; *Manning v. School District No. 6 of Ft. Atkinson,* 124 Wis. 84, 102 N. W. 156; *White v. McLaren,* 151 Mass.

553, 24 N. E. 911; *Gleason v. Smith,* 9 Cush. (Mass.) 484, 57 Am. Dec. 62; *Hartford Mill Co. v. Hartford Tobacco Warehouse Co.,* 121 S. W. (Ky.) 477.

But it is said that appellants insisted that respondents proceed with the work notwithstanding the soil, weather and water conditions, and that by so doing they are now estopped to complain. We cannot accept this view. All the appellants did was to express a desire that the house be completed so that they might move into it. They did not know at that time that the floors were not level or that the southwest corner was low; they did not know what effect the presence of water in the basement might have on the house or its foundations.

For the reasons stated, we are unable from the record before us to determine the amount of damage which should be allowed to the appellants. The judgment is reversed, and the cause remanded with directions to the trial court to proceed in accordance with the views here expressed.

MAIN, C. J., MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.