[No. 27338.   Department Two.   May 19, 1939.]

A. L. KENNEY *et al., Respondents,* v. IVAN H. ABRAHAM
*et al., Appellants.*[1]

*G. M. Ferris* and *Wernette & Crowley,* for appellants.

*Tustin & Chandler,* for respondents.

MILLARD, J.—Ivan H. Abraham entered into a written contract with A. L. Kenney to construct for the latter a one-story brick veneer cottage in Spokane according to certain plans and specifications prepared

[1]Reported in 90 P. (2d) 713.

by a firm of architects employed by Kenney. The plans and specifications required the contractor

" . . . to lay out his work and be responsible for the same, and see that everything is done in a workmanlike manner, according to the best building practice."

The building contractor was required by the specifications to

" . . . excavate as shown to be necessary by the drawings for the basement, for all areas, footings, etc. Care shall be taken to excavate to the exact depth required as in no case shall any footings start on filled ground."

Kenney agreed with Abraham, at the time they entered into the contract for the construction of the house, to dispense with the supervisory services of an architect. The contractor discovered, when making the excavation for the foundation, that the lot on which the house was to be built was a filled lot. The contractor testified that, on making his discovery of the character of the soil, and before he laid the foundation of the house, he made telephonic request of the owner to call at the building site and look at the soil; that the foundation of the house was constructed sixteen inches higher than specified by the plans, which change was made pursuant to agreement with Kenney.

The concrete for the foundation was poured on filled ground, loose rock, pine needles, and decaying vegetable matter; and as a result the foundation of the house, shortly after Kenney moved into the building, settled to such an extent that the interior walls of the building were cracked open, and, under the evidence, the building was damaged to such an extent as to require the expenditure of approximately the original cost of construction to repair the same.

An action was instituted by Kenney against Abra-

ham to recover damages for breach of the building contract. The cause was tried to the court, which found, among other things, that defendant breached the contract in that he did not excavate to the depth required by the drawings and specifications, or until solid earth was obtained on which the concrete walls should be constructed, but placed the foundation walls on surface fill composed of loose dirt, rotted leaves, pine needles, etc., and as a result the foundation walls of the building settled out of level after the foundations were poured. The trial court further found that the contractor failed to construct the building in compliance with the contract, which required the contractor to see that "everything is done in workmanlike manner, according to the best building practice."

"The Court further finds that the defendants failed to construct said building in compliance with the contract, requiring defendants to see that 'everything is done in workman-like manner according to the best building practice.' That the best building practice does not permit foundation to rest on made or filled ground, and finds further that the specifications themselves expressly say: ' Care shall be taken to excavate to the exact depth required as in no case shall any footing start on filled ground.' The Court finds that the foundation was started on filled ground and therefore contrary to this provision of the contract. The defendant, Ivan H. Abraham, himself testified that he discovered that the ground was filled and that he so informed the plaintiffs, owners, and told them that he would not go on with the work until the plaintiffs directed him to do so. This statement was denied in toto by the plaintiff and the Court finds that the defendant failed to establish this claim by the preponderance of the evidence."

The court further found that the defects in the building as contracted by the contractor are so many and so serious that the contractor's liability can only be measured by the difference in the value of the house

in its present condition and what the value of the house would have been if there had not been these defects; that Kenney owes the contractor on the contract, for the construction of the building, $939.50, which amount should be deducted from $3,472.35 (the damage sustained by Kenney by reason of the failure on the part of the contractor to build the house in accordance with the contract, plans and specifications), leaving a balance of $2,532.85, for which Kenney is entitled to judgment. Judgment was entered accordingly against Abraham and wife in favor of Kenney and wife. The defendants appealed.

Counsel for appellants contend that respondents furnished the plans, specifications, and a prospectus, which the contractor followed in building the house; therefore, the contractor cannot be held liable in damages for the defects occurring in the house due to the plans, specifications, and prospectus furnished by the owner. Among the many authorities cited by appellants in support of the foregoing is the following note preceding the authorities listed, under the subject of responsibility of construction contractor for defects or insufficiency of work attributable to plans and specifications furnished by the contractee, in 88 A. L. R. 798.

"The rule has become well settled, in practically every American jurisdiction in which the matter has been involved, that a construction contractor who has followed plans and/or specifications furnished by the contractee, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results—at least after the work is completed—solely from the defective or insufficient plans or specifications, *in the absence of any negligence on the contractor's part,* or any express warranty by him as to their being sufficient or free from defects." (Italics ours.)

The weakness in the position of appellants is that the foundation of the house was not built in accordance with the plans and specifications. Had the plans been followed, the foundation walls would have been sixteen inches deeper down into the soil. Appellant contractor admitted that the foundation of the house as contracted was sixteen inches higher than specified in the plans. While he testified that the plans were changed under an oral agreement with the respondents, the latter denied that they had agreed to the change. The trial court's memorandum opinion reads in part as follows:

"It is in evidence (and it rests in common sense as well) that the best building practice does not permit a foundation to rest on made or filled ground. The specifications themselves expressly say: 'Care shall be taken to excavate to the exact depth required *as in no case shall any footing start on filled ground.*' Defendant contractor himself testified that he discovered that the ground was filled and says he so informed the plaintiff owner and said that he would not go on with the work until the plaintiff directed him to do so. This is denied *in toto* by the plaintiff and I must find that the defendant has failed to establish this claim by the preponderance of the evidence. Aside from the plaintiff's denial, would the owner erecting a home for himself permit so foolish a thing as to allow the contractor to place the foundation on filled ground? Besides, when the bad cracks appeared and the contractor's attention was called to them, he seemed surprised and said he could not account for them. Had he, when he first discovered that it was filled ground, told the owner of the danger of putting the foundation on filled ground, he would have said at once that this is what he warned him of when he was laying the foundation. In short, the failure of the contractor to build the foundation in a good and workmanlike manner instead of building it on filled ground is the foundation of his liability."

Contractor Abraham knew—he is charged with knowledge—when he discovered that the lot on which the house was to be erected was filled ground, that, unless the superstructure rested on a substantial foundation, the building would settle as it did. Having dispensed with the services of an architect, and relying on the contractor, who informed Kenney that he, the contractor, was perfectly capable of performing the work according to the plans and specifications, it was the responsibility of the contractor to see that the building was placed on a substantial foundation.

The foundation was placed on filled ground contrary to the specifications requiring care be taken to excavate to the exact depth required "as in no case shall any footings start on filled ground." Appellant contractor knew that the ground was filled and was not one on which a foundation should be placed. He testified that he informed the respondents that the ground was filled, but that he was directed by the respondents to place the foundation on that filled ground. This was denied by the respondent owner, whom the trial court believed. From the cold record, we cannot say that the trial court should not have accepted as true the testimony of the respondents, and we cannot say from our examination of the record that the appellants established their claim by the preponderance of the evidence that respondents agreed or directed the doing of so foolish a thing as the erection of a home for themselves on a foundation placed on filled ground.

The contractor failed to substantially perform his contract according to its terms. He knew that the character of the earth on which the foundation was laid was such that, when the superstructure was placed on the foundation, there would result a sinking or sagging of the building. This was a matter which the

contractor was bound to take into consideration, because it was a part of his contract with the respondents; therefore, it logically follows that he is liable for the damage proximately resulting from his negligence.

An apt authority is *White v. Mitchell*, 123 Wash. 630, 213 Pac. 10, in which we held that contractors undertaking to build a house complete, do not substantially perform the contract, because the variations from the contract are not relatively small and inadvertent, where they put in a defective concrete foundation wall which sank and allowed the building to sag out of level.

We find no comfort for appellants in the statement quoted above from the annotation on page 798 of Vol. 88, A. L. R. The rule invoked by appellants to the effect that a contractor will not be responsible to the owner for loss or damage which results solely from the defective or insufficient plans or specifications followed by the contractor, which plans or specifications were furnished to the contractor by the owner's architect or engineer, is qualified. That rule is not applicable where there is negligence, as in the case at bar, on the contractor's part.

Counsel for appellants next contend that a very liberal allowance to make for the damages sustained by respondents would be $750, which, in view of the balance due to the appellants from respondents of $939.50 for construction of the building, entitled appellants to a judgment in the amount of $185.50.

The trial court found that the difference between the value of the house as constructed and its value had it been constructed in accordance with the plans and specifications was $3,472.35. Respondents owe $939.50 to appellants on the contract. The deduction of that amount leaves $2,532.85, for which respondents were awarded judgment.

The appellants were obligated to construct for re-

spondents the house in question in a first-class, workmanlike manner. The evidence does not preponderate against the finding of the trial court that the building was not completed in substantially the manner required by the contract. We held in *White v. Mitchell*, 123 Wash. 630, 213 Pac. 10, that, where there was not a substantial performance of a contract to construct a building, the measure of damages is the difference between the value of the building as constructed, and its value had it been constructed in accordance with the contract. Whether the building was completed in substantially the manner required by the contract, was a question of fact, and, as we have heretofore stated, there was ample evidence sustaining the trial court's finding that the building was not completed in substantially the manner required by the contract; therefore, the trial court applied the proper rule as to the measure of damages.

Appellants next complain of the trial court's method of computation of the amount to which respondents were entitled.

Respondents alleged in a former complaint that the value of their house (including the lot and betterments) in its damaged condition was seven thousand dollars. Appellant Abraham testified he would pay six thousand dollars for the property. From each of the above figures, the court deducted the value of lot and betterments in the amount of $2,039.65. This would make the value of the house, according to the respondent's estimate, $4,960.35; according to appellant's estimate, $3,960.35. The average valuation of respondent's real estate expert witnesses of the house was $3,583, from which amount the court deducted the value of the lot and betterments, as above shown, which left $1,543.35 as the value of the house in its damaged condition. We are not favored with the

valuation by appellants' expert witnesses on the house in its present condition.

The court added respondent's estimate, appellants' estimate, and the average value according to respondents' witnesses, making a total valuation of $10,464.05. The court divided this amount by three, obtaining thereby the average of $3,488 as the value of the house in its present condition. There is evidence that, if the building had been constructed in accordance with the contract, it would have a value of $6,960.35. Respondents' damages, therefore, were $3,472.35, the difference between these two amounts. A credit of $939.50, balance due on the contract from respondents to appellants, was allowed, which entitled them to a judgment in the amount of $2,532.85.

While the trial court arrived at the amount of judgment by an "average" of the value estimated by the witnesses, the damages were within the range of the amounts fixed by the witnesses. In *Eckhardt v. Harder,* 160 Wash. 207, 294 Pac. 981, we held that, where three witnesses testified as to the difference in the value of a building as constructed and what its value would have been had it been constructed in accordance with the contract, if the amount determined by the trial court is within the testimony of these witnesses the trial court's finding will not be disturbed. In principle, that authority is not distinguishable from the case at bar.

The judgment is affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and SIMPSON, JJ., concur.