**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILED
SUPREME COURT
STATE OF WASHINGTON
9/14/2021
BY ERIN L. LENNON
CLERK

**IN THE SUPREME COURT OF THE STATE OF WASHINGTON**

LAKE HILLS INVESTMENTS, LLC, a
Washington limited liability company,

        Respondent,

        v.

RUSHFORTH CONSTRUCTION CO., INC.
d/b/a AP RUSHFORTH, a Washington
corporation; and ADOLFSON & PETERSON
INC., a Minnesota corporation,

        Petitioners.

No. 99119-7

ORDER
AMENDING
OPINION

It is hereby ordered that the majority opinion of Madsen, J., filed September 2, 2021, in the above entitled case is amended as indicated below.

On page 6, in the last line of the text above the footnote, after "should be for AP as to that area." in the indented quotation, insert one line of space, followed by "*Id*. at 348-49.", not indented.

On page 7, line 13 of the slip opinion, beginning with "AP counters" delete all material down to and including "*Spearin* Doctrine))." in line 19 and insert the following:

> AP counters that jury instruction 9 was a correct statement of the law, citing *Maryland Casualty Co. v. City of Seattle*, 9 Wn.2d 666, 116 P.2d 280 (1941), as controlling law. Additionally, AP points to a sample jury instruction, drafted by the construction section of the Washington State Bar Association (WSBA), as support for its position that

*Lake Hills Invs., LLC v. Rushforth Constr. Co., Inc.*, No. 99119-7 (order amending opinion)

jury instruction 9 was correct. Pet. for Review at 6 & n.2 (citing WSBA Construction Law Section, Construction Law Jury Instruction No. 3.4 (Accuracy of the Plans and Specifications – *Spearin* Doctrine)).

DATED this __14th__ day of September, 2021.

_____
                                    Chief Justice

González C.J.

APPROVED:

_____
        Madsen, J.

Madsen, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 2, 2021

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 2, 2021

*E.L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LAKE HILLS INVESTMENTS, LLC, a Washington limited liability company, | ) ) ) | No. 99119-7 |
| Respondent, | ) ) | |
| v. | ) ) | En Banc |
| RUSHFORTH CONSTRUCTION CO., INC. d/b/a AP RUSHFORTH, a Washington corporation; and ADOLFSON & PETERSON INC., a Minnesota corporation, | ) ) ) ) ) ) | |
| Petitioners. | ) ) | Filed: September 2, 2021 |
| _____ | ) | |

MADSEN, J.—Lake Hills Investments LLC sued AP Rushforth (AP) for breach of contract, alleging, among other things, that the work AP conducted on the Lake Hills Village project was defective. AP counterclaimed that Lake Hills underpaid them. At trial, an affirmative defense instruction (jury instruction 9) was given, stating that "AP has the burden to prove that Lake Hills provided the plans and specifications for an area of work at issue, that AP followed those plans and specifications, and that the [construction] defect resulted from defects in the plans or specifications. If you find from

your consideration of all the evidence that this affirmative defense has been proved for a particular area, then your verdict should be for AP as to that area." 1 Clerk's Papers (CP) at 348-49. *Lake Hills Inv., LLC v. Rushforth Constr. Co.*, 14 Wn. App. 2d 617, 631, 472 P.3d 337 (2020).

The Court of Appeals held that this instruction understated AP's burden of proof and allowed the jury to find that if any part of the construction defect resulted from Lake Hills' plans and specifications, then the jury could find for AP. The court concluded that the error was not harmless, reversed, and remanded for a new trial. We reverse the Court of Appeals.

BACKGROUND

Lake Hills contracted with AP to construct Lake Hills Village, a mixed-use property consisting of multiple buildings, including a King County library branch, two retail-office-residential buildings, three commercial buildings, some townhouses, an elevator tower, and a pedestrian bridge.

The project was built in phases. Phase 1 involved the library and an office building (building A). Phase 2C called for part of an underground garage, which included a ground concrete slab, a concrete topping slab on the parking garage for the aboveground parking lot, and the foundation for the two mixed-use buildings and a commercial building (buildings B, C, and D, respectively). Phase 3 consisted of the physical structures for buildings B, C, and D. Phase 4 involved townhouses. Under phase 5A, the elevator tower, the pedestrian bridge, the rest of the underground parking

garage, and a retail space under building A were constructed. Phase 5B completed the construction plans with building F. AP was the general contractor for phases 2C, 3, 5A, and 5B.

Every phase of the project had its own substantial completion date and liquidated damages were assessed for any delays past the substantial completion date. All phases that AP was contracted to build (phases 2C, 3, 5A, and 5B) were delayed. In November 2014, Lake Hills sent a letter to AP notifying AP that because it was behind schedule and there was defective work on the site, such as excessive cracking in the concrete garage floor slab, AP was in breach of contract. AP asserted that the construction delays and defects stemmed from Lake Hills providing a defective "concept" rather than viable plans and specifications. Lake Hills filed suit against AP, alleging, among other claims, that AP had performed defective work in eight areas.[1] AP stopped working on Lake Hills Village and filed its own breach claim, alleging underpayment.

The trial lasted two months. Using a special verdict form, the jury returned a mixed verdict. On the question of whether AP had rendered defective work as to any area of work, the jury answered yes. It awarded damages in six of eight areas of claimed defects. The jury also found Lake Hills had breached the contract in several respects.[2]

---

[1] Lake Hills' second breach of contract claim alleged that AP delayed the construction of each of the four phases of work and failed to substantially complete each phase in the time required by the contract. Its third breach of contract claim alleged that AP improperly stopped work before completing all the work required by contract, including corrections to unfinished work. These claims are not before this court. 1 CP at 344.

[2] The jury also found that each phase of the project was completed past its substantial completion date and that Lake Hills was responsible for the majority of the days the project was delayed, that

No. 99119-7

The net judgment to AP was $9.2 million, including $5.8 million in attorney fees and costs.

The Court of Appeals reversed based on jury instruction 9, the affirmative defense of defective plans or specifications. The court held that jury instruction 9 misstated the law governing AP's affirmative defense because a construction defect must result "solely" from the defective or insufficient plans or specifications. The court concluded the error in the affirmative defense instruction prejudiced Lake Hills. Relying on *Kenney v. Abraham*, 199 Wash. 167, 170, 90 P.2d 713 (1939), and other Washington cases,[3] the court reasoned that "a party must perform its duties and a failure to perform entitles the injured party to damages proximately caused by the breach" with limited exceptions.[4] *Lake Hills*, 14 Wn. App. 2d at 630. A defective plans affirmative defense, the court noted, can relieve a breaching general contractor of its liability if a contractor can prove an alternate proximate cause. The court noted that "AP's affirmative defense theory was that a single cause, defective plans or specifications, injured Lake Hills. To be relieved of all liability for its breaches, AP had to prove Lake Hills' defective designs 'solely' caused the plaintiff's damages." *Id*. at 631. The Court of Appeals acknowledged that "including 'solely' may not be the only way to clarify the precise burden of proof for a

AP was not responsible for stopping work, and that Lake Hills had breached the contract by underpaying AP. 1 CP at 371-77.

[3] *Md. Cas. Co. v. City of Seattle*, 9 Wn.2d 666, 116 P.2d 280 (1941); *White v. Mitchell*, 123 Wash. 630, 634-35, 213 P. 10 (1923); *Valley Constr. Co. v. Lake Hills Sewer Dist.*, 67 Wn.2d 910, 915-16, 410 P.2d 796 (1966).

[4] MICHAEL T. CALLAHAN ET AL., CONSTRUCTION DISPUTES: REPRESENTING THE CONTRACTOR § 20.02 (4th ed. 2020).

No. 99119-7

defective plans affirmative defense." *Id*. at 631 n.43. But, the court held that some modifier was required because otherwise any evidence of a defect in the plans and specifications could allow AP to avoid all liability for the affected project area even if AP's negligence caused some of the damage.

AP appealed, and Lake Hills cross appealed. We granted review only on jury instruction 9. Multiple amici submitted briefing.[5]

ANALYSIS

A. The Affirmative Defense

The heart of this case is whether jury instruction 9 correctly stated the standard for the affirmative defense of defective plans and specifications.

An appellate court reviews a trial court's decision to give a jury instruction "'de novo if based [on] a matter of law, or for abuse of discretion if based [on] a matter of fact.'" *Hendrickson v. Moses Lake Sch. Dist.*, 192 Wn.2d 269, 274, 428 P.3d 1197 (2018) (internal quotation marks omitted) (quoting *Taylor v. Intuitive Surgical Inc.*, 187 Wn.2d 743, 767, 389 P.3d 517 (2017)). "'Prejudice is presumed if the instruction contains a clear misstatement of law[. However,] prejudice must be demonstrated if the instruction is merely misleading.'" *Paetsch v. Spokane Dermatology Clinic, PS*, 182 Wn.2d 842, 849, 348 P.3d 389 (2015) (quoting *Anfinson v. FedEx Ground Package Sys.,*

---

[5] Amici include the State of Washington, the Washington State Association of Municipal Attorneys, the American Council of Engineering Companies of Washington & AIA Washington Council, the Building Industry Association of Washington, Associated General Contractors of Washington et al., and Surety and Fidelity Association of America et al.

No. 99119-7

*Inc.*, 174 Wn.2d 851, 860, 281 P.3d 289 (2012)). "The presumption of prejudice from a misstatement of law can be overcome only on a showing that the error was harmless." *Id*.

By its terms, jury instruction 9 applied to Lake Hills' first breach of contract claim, which alleged multiple construction defects in eight areas of work. The parties agreed that AP had a duty to construct the buildings in compliance with the contract documents, so the first element listed in jury instruction 9 was not at issue. Thus, Lake Hills had the burden of proving

> 2. That AP breached the contract by failing to construct certain areas of work in compliance with the contract documents; and
> 3. That Lake Hills was damaged as a result of AP's breach.

1 CP at 348.

Because the jury found AP was in breach,[6] jury instruction 9 advised the jury to consider AP's affirmative defense that Lake Hills' defective plans or specifications were the cause of the construction defects and damages.

> For its affirmative defense, AP has the burden to prove that Lake Hills provided the plans and specifications for an area of work at issue, that AP followed those plans and specifications, and that the [construction] defect resulted from defects in the plans or specifications.
> If you find from your consideration of all the evidence that this affirmative defense has been proved for a particular area, then your verdict should be for AP as to that area.

---

[6]

> "If you find from your consideration of all the evidence that any of these propositions has not been proved for a particular area of defective work, your verdict should be for AP as to that area. On the other hand, if each of these propositions has been proved for a particular area, then you must consider the affirmative defense claimed by AP for that area."

1 CP at 348.

6

Before finalizing the instructions, the parties discussed whether to add the word "solely" to the affirmative defense instruction. Lake Hills argued that the affirmative defense requires the word "solely" in order for AP to meet its burden to show that the defects were not the result of AP's deficient performance. In response, AP argued it was unnecessary to add "solely" to the instruction because, in its view, it did not have to prove that every performance problem was associated with the plans. Initially, the trial court inserted the word "primarily" rather than "solely" only to remove it prior to jury deliberations. Ultimately the court chose not to add the word "solely" because it thought it was confusing and difficult to track.

On review Lake Hills asserts that jury instruction 9 misstated the law, citing *Kenney* and *Valley Construction Co. v. Lake Hills Sewer District*, 67 Wn.2d 910, 410 P.2d 796 (1966).

AP counters that jury instruction 9 was a correct statement of the law, citing *Maryland Casualty Co. v. City of Seattle*, 9 Wn.2d 666, 116 P.2d 280 (1941), as controlling law. Additionally, AP points to the Washington Pattern Jury Instructions, drafted by the construction section of the Washington State Bar Association (WSBA), as support for its position that jury instruction 9 was correct. Pet. for Review at 6 & n.2 (quoting WSBA Construction Law Section Pattern Instruction No. 3.4 (Accuracy of the Plans and Specifications – *Spearin* Doctrine)).

There are fundamental duties in every contract. 1A PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER AND O'CONNOR ON CONSTRUCTION LAW § 3:4, at

17 (2016). "Construction contracts commonly contain provisions under which a contractor expressly warrants the quality of its workmanship and materials." 3 PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER AND O'CONNOR ON CONSTRUCTION LAW § 9:54, at 592 (2002). Generally, contractors have an implied duty to "perform the work skillfully, carefully, and in a workmanlike manner, free from defects in either materials or workmanship. . . . [A]n owner who, directly or indirectly, furnishes the plans and specifications for the work, impliedly warrants to the contractor that they will be sufficient for their particular purpose." MICHAEL T. CALLAHAN ET AL., CONSTRUCTION DISPUTES: REPRESENTING THE CONTRACTOR § 20.02, at 856 (4th ed. 2020); *see* 3 BRUNER & O'CONNOR, *supra*, § 9:82, at 670-71 (2002); *see also Ericksen v. Edmonds School Dist. No. 15*, 13 Wn.2d 398, 408, 125 P.2d 275 (1942) ("[A] contractor is required to build in accordance with plans and specifications furnished by the owner, the [owner] impliedly guarantees that the plans are workable and sufficient.").

"The owner's implied warranty of the adequacy of the plans and specifications has been adopted in nearly all jurisdictions." 3 BRUNER & O'CONNOR, *supra*, § 9:81, at 666. One of the implied conditions includes the owner's implied warranty of the adequacy of detailed design documents. *Id*. at 668. This implied warranty appears in the context of structural defects. *Id*. at 669.

"[T]he owner's implied design warranty is available to the contractor as a shield against claims brought by the owner. If a contractor establishes that it followed the plans

No. 99119-7

and specifications, then it usually is not responsible for a result unsuited to the owner's purposes." 3 BRUNER & O'CONNOR, *supra*, § 9:83, at 671.

"To successfully assert this defense, at a minimum the contractor must establish that: (1) its obligations went no further than to conform with the plans and specifications prescribed by the owner as part of the contract; and (2) it [completed] the work in exact accordance with those plans and specifications." CALLAHAN ET AL., *supra*, § 20.02, at 857. "[T]he availability of the implied warranty defense will depend on the facts and circumstances of the particular case, and more particularly on the language of the construction contract and the documents incorporated by reference, such as the plans and specifications." *Id*. at 859. "At the heart of the legal concept of implied conditions and warranties is the legal allocation of risk of nonperformance under the doctrine of 'control,' which allocates the risk of nonperformance to that party in 'control' of the condition preventing full performance." 1A BRUNER & O'CONNOR, *supra*, § 3:4, at 18 (footnote omitted). The breach of this warranty can be the basis of an affirmative defense. *Kenney*, 199 Wash. at 170.

Washington State first recognized the implied warranty of design accuracy in construction contracts in *Ward v. Pantages*, 73 Wash. 208, 211, 131 P. 642 (1913).[7] Five years later the United States Supreme Court, in *United States v. Spearin*, 248 U.S. 132,

---

[7] "'Where the builder performs his work strictly in conformity with plans and specifications, he is not liable for defects in the work that are due to faulty structural requirements contained in such plans and specifications, and may recover under the contract, unless he has warranted that the plans and specifications are correct.'" *Ward*, 73 Wash. at 211 (quoting 6 Cyc. *Builders and Architects* 63 (1903)); *see also Huetter v. Warehouse & Realty Co.*, 81 Wash. 331, 335, 142 P. 675 (1914) (citing *Ward*).

9

No. 99119-7

39 S. Ct. 59, 63 L. Ed 166 (1918), established the standard for the implied warranty of

design accuracy across the United States.

In *Spearin*, the contractor sued to recover for work done under a contract to build a

dry dock in accordance with the plans and specifications that were prepared by the United

States government. 248 U.S. at 133. The plans and specifications required the contractor

to do the work and follow the prescribed dimensions and materials, including the

relocation of a sewer. *Id*. at 133-34. These requirements were followed by the

contractor, and a relocation substitution was accepted by the government. *Id*. at 134.

During the construction of the dry dock, there was a heavy downpour that flooded the

excavation site. *Id*. Government officials were aware that the sewers in this area flooded

from time to time; however, the contractor was unaware of this fact because he had

conducted a cursory inspection of the excavation site. *Id*. at 134-35. The sewers in the

excavation area broke, and the contractor refused to continue construction unless the

government remedied the existing conditions. *Id*. at 135. Negotiations between the

contractor and the government stalled, and the construction of the dry dock was

completed by other contractors. *Id*.

The Supreme Court, applying well-established construction contract principles,

stated,

> Where one agrees to do, for a fixed sum, a thing possible to be performed,
> he [or she] will not be excused or become entitled to additional
> compensation, because unforeseen difficulties are encountered. Thus one
> who undertakes to erect a structure upon a particular site, assumes
> ordinarily the risk of subsidence of the soil. But *if the contractor is bound*
> *to build according to plans and specifications prepared by the owner, the*

10

No. 99119-7

> *contractor will not be responsible for the consequences of defects in the plans and specifications*.

*Id*. at 136 (emphasis added) (citations omitted).

The Court held that the contractor was excused from continuing performance on the contract because the government breached the implied warranty of plans and specifications when its plans and specifications were not adequate and the damage caused to the dry dock was a result of these plans. *Id*. at 137.

Shortly thereafter, this court decided *White v. Mitchell*, 123 Wash. 630, 213 P. 10 (1923). In *White*, the plaintiffs owned a tract of land in Sumner on which they wanted to build a house. *Id*. at 631. The plaintiffs entered into a contract with the defendants to construct this house. *Id*. There were a few drawings and specifications for the type of house the plaintiffs desired. *Id*.

The contractor offered to hand over the house to the owners when they considered construction complete. *Id*. However, the owners claimed that the house was not constructed according to the agreed upon plans and specifications, refused to pay the balance of the contract price, and sued for damages. *Id*. at 632. The trial court awarded the owner damages of $250 and gave the contractor the balance of the contract price. *Id*. The owners appealed. *Id*.

On appeal, the contractor contended that it was not responsible for the material construction defects because the ground the house was built on was soft ground, and as a result, water flooded the basement, causing the damage at issue. *Id*. at 633. The contractor also argued that the owner was partially responsible for the defects because

11

when the contractor drew the specifications and added a carve-out and a drainage expense, the owners rejected that suggestion. *Id.* at 636. The owner argued that even if the house was built on soft ground, the contractor was not excused from its performance because it contracted to turn the house over in a proper condition. *Id.* at 637.

The court held that the contractor had agreed, regardless of whether the agreement was implied or expressed, to construct the house in a "reasonably good and workmanlike manner." *Id.* at 634. It reasoned that the contractor had a duty to examine the condition of the soil and know the difficulties it would encounter, and to anticipate that water would be present in the basement causing damage to the house. The court cited the general rule that

> a builder must substantially perform his contract according to its terms, and in the absence of contract governing the matter, he will be excused only by acts of God, impossibility of performance, or acts of the other party to the contract preventing performance. If he wish[es] to protect himself against the hazards of the soil, the weather, labor or other uncertain contingencies, he must do so by his contract.

*Id.* at 634-35.

*Kenney* followed *White*. In that case, the contractor entered into a written contract with the owner to build a house according to the plans and specifications prepared by architects employed by the owner. *Kenney*, 199 Wash. at 167-68. The plans and specifications required the contractor to complete the work and to see to it that the work was completed in a "'workmanlike manner, according to the best building practice.'" *Id.* at 168. When the contractor started building the house, it discovered that the character of the soil was unsuitable for building on. *Id.* Nevertheless, the contractor poured the

No. 99119-7

foundation on the unsuitable ground. *Id*. As a result, the foundation of the house settled, severely damaging the structure. *Id*.

The owner sued for breach of the building contract. *Id*. at 168-69. The trial court held that the contractor failed to construct and build in compliance with the contract. *Id*. at 169. The contractor appealed. *Id*. at 170. The contractor argued that because the owners furnished the plans and specifications, which the contractor followed, it could not be held liable for damages due to the plans and specifications. *Id*. Quoting 88 A.L.R. 790, 798 (1933), the contractor argued that

> "a construction contractor who has followed plans and/or specifications furnished by the contractee, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results—at least after the work is completed—solely from the defective or insufficient plans or specifications, *in the absence of any negligence on the contractor's part*, or any express warranty by him as to their being sufficient or free from defects."

*Id.* at 170 (quoting Annotation, *Responsibility of Construction Contractor or His Bond to Contractee for Defects or Insufficiency of Work Attributable to Plans and Specifications Furnished by Latter, His Engineer or Architect*, 88 A.L.R. 797, 798 (1934) (replaced by S. Bernstein, Annotation, *Construction Contractor's Liability to Contractee for Defects or Insufficiency of Work Attributable to the Latter's Plans and Specifications*, 6 A.L.R.3d 1394, § 2 (1966))).

The *Kenney* opinion established two holdings. First, the court held that the contractor failed to substantially perform its contract according to contract terms and was liable for the damage proximately caused from its negligence. *Id*. at 172-73. The court

13

ruled that the contractor knew the ground was unsuitable for building and failed to follow the specifications in the contract that no footings be started on filled soil. Second, the court held that the rule cited above does not apply in cases where the contractor is negligent. *Id*. at 173.

AP argues that *Kenney* relied on the A.L.R. and the A.L.R. is an inaccurate statement of the law regarding the word "solely." It also claims that *Kenney* conflicts with *White*, which recognizes that a contractor may defend against a claimed breach for a number of reasons, including the acts of another party and that *White* does not use the word "solely." Admittedly, there does appear to be some tension between *Kenney* and *White*. However, as AP points out, the *White* court did not expressly adopt the cited A.L.R. section, nor did it rely on it since the court held the contractor did not follow the specifications of the contract.

Three years after *Kenney*, this court decided *Maryland Casualty Co.*, 9 Wn.2d 666. There, in performing sewer work for the city of Seattle, the contractor chose a more expensive method of completing the project. *Id*. at 668-69. The contractor asserted that it should be paid for expenses incurred in constructing the project. *Id*. at 669. Quoting *Spearin* and *White*, the court held that the contractor's claim for additional compensation was properly denied because the method it selected was not contractually authorized. *Id*. at 674-76, 680. As noted above, neither *Spearin* nor *White* mention the word "solely" in discussing the duties and affirmative defenses of a contractor.

No. 99119-7

Years later, this court decided *Valley Construction Co.*, 67 Wn.2d 910. The contractor in that case sued to recover an unpaid balance on a contract and to recover costs for repairs. *Id*. at 911. The owner countersued, asserting that the contractor had failed to follow the plans and specifications. *Id*. Applying principles from *Kenney*, *White*, and *Maryland Casualty*, the court ruled that the contractor was not entitled to the additional costs because it had departed from the owner's plans and specifications. *Id*. at 917-18. *Maryland Casualty* and *Valley Construction* align with *White* and *Spearin*. The principle guiding these cases is that generally a party agreeing to perform a duty will not be excused simply because unforeseen difficulties are encountered but that a contractor is not responsible for damages when it was "misled by erroneous statements in the specifications." *Spearin*, 248 U.S. at 136.

As amicus State of Washington notes, the issue is not whether the word "solely" was missing from jury instruction 9. Br. of Amicus Curiae State of Wash. at 15. Rather, the issue is deciding "whether the implied warranty of design accuracy can completely shield a contractor from liability for breaching its duty of good workmanship when the jury could find that the defective work resulted, at least in part, from the contractor's deficient work and failure to follow the plans and specifications." *Id*.

The rationale for the defective design defense is fairness based on control. If the owner provides a defective design, then the contractor should not be responsible for the damage caused by following the design because he was not the source of the defects. An affirmative design defect defense is a complete defense if the damage is solely due to the

15

design. However, if the defects were caused by a combination of deficient performance and deficient design, then it is not a complete defense. Jury instruction 9 was potentially misleading because it described the defense as a complete defense and did not explicitly inform the jury that it could calculate and attribute proportional liability, determining what percentage of the defect was caused by defective specifications.

B. Prejudice

Because jury instruction 9 had the potential to mislead the jury, Lake Hills bears the burden of establishing prejudice resulting from the instruction.

Lake Hills has two central arguments regarding prejudice. First, Lake Hills alleges that the special verdict reveals the prejudicial impact of jury instruction 9 because the jury awarded Lake Hills only $1.4 million on its requested damages of $11.4 million. It contends that the jury awarded only the amounts that AP conceded. Second, it claims that jury instruction 9 directed the jury to ignore the substantial evidence of AP's failure to comply with Lake Hills' plans and specifications if it found that Lake Hills' plans were also insufficient.

AP maintains that any error in the instruction is harmless. It argues that jury instruction 9 allowed Lake Hills to argue its theory of the case that AP's failure to follow the plans and specifications caused damage to Lake Hills Village. AP points to the fact that the while the jury did not award damages to Lake Hills on two claims, the jury did award damages on six other claims.

We agree with AP that the instructions as a whole were sufficient to allow the jury to apportion fault between Lake Hills and AP.

The trial court agreed with Lake Hills that AP had the burden of proof "to the extent they're alleging that defects [were] due to the plans and specifications" and that the instruction, as phrased, "understate[d] AP's burden." 7 Verbatim Tr. of Proceedings (July 27, 2018) at 2401-02. However, the trial court reasoned that "if AP did something defectively and that was 50 percent due to the plans and specifications and 50 percent due to poor workmanship, th[en] they can only claim a lack of responsibility for the 50 percent due to the defective plans and specifications." *Id*. at 2401. Lake Hills' theory of the case was that AP did not follow the plans and specifications provided to them, and as a result, multiple construction defects occurred.[8] Lake Hills supported this theory primarily through its employee who testified that Lake Hills' plans and specifications did not contribute to the construction defects. 2 Verbatim Report of Proceedings (VRP) (June 27, 2018) at 203-15. In contrast, one of AP's experts testified that the plans and specifications caused the cracking of the concrete by requiring use of rebar to reinforce the garage slab. 16 VRP (July 31, 2018) at 2783-85. The jury was entitled to weigh the evidence and make credibility determinations.

---

[8] Lake Hills asserted that the topping slab required in phases 2C and 5A was riddled with cracks, that the concrete did not conform to its specifications, that the garage slopes were uneven, that capillary breaks were not inserted, that the tower and bridge had a crooked column, and that the resilient channels were missing. 2 Verbatim Report of Proceedings (June 27, 2018) at 202-03, 217-19.

No. 99119-7

Reading the jury instructions together, Lake Hills fails to prove prejudice. First, jury instruction 7 instructs the jury that both Lake Hills and AP were plaintiffs as to their separate claims. 1 CP at 342. Jury instruction 7 also told the jury to decide the claims of each party separately as a separate lawsuit. *Id*. Jury instruction 8 informed the jury of Lake Hills' breach of contract claims, the damages sought, and the areas of defective work. *Id*. at 343-47. Jury instruction 8 listed the amounts claimed by each side and the affirmative defenses claimed. *Id*. As made clear in the special verdict form and jury instruction 8, the jury had every opportunity to award Lake Hills damages based on its claims for each breach of contract. As succinctly stated by AP, "The fact that Lake Hills was not wholly successful on all of its claims does not establish . . . any resulting prejudice." Pet'rs' Suppl. Br. at 15. We find that Lake Hills was not prejudiced by jury instruction 9.

C. Attorney Fees

AP argues that it is entitled to recover its appellate fees pursuant to its contract, the lien foreclosure statute (RCW 60.04.181(3)), and RAP 18.1. *Id*. at 16. The contract provides an award of all attorney fees to the prevailing party, including costs on appeal. Accordingly, we award appellate fees to AP.

18

No. 99119-7

CONCLUSION

Although jury instruction 9 had the potential to mislead the jury, Lake Hills cannot show it was prejudiced. We reverse and remand to the Court of Appeals to consider issues related to the trial court's award of attorney fees.[9]

_____
Madsen, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.

---

[9] Lake Hills raised several issues on appeal concerning the trial court's award of attorney fees. The Court of Appeals reversed the trial court on other grounds and did not reach these issues.

19